UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Appliance Recycling Centers of America, Inc., | Civil Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Protiviti, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Appliance Recycling Centers of America, Inc. ("ARCA"), for its Complaint against Defendant Protiviti, Inc. ("Protiviti"), states and alleges as follows:

## INTRODUCTION

1. This is an action arising out of Protiviti's breach of contract, negligence, and gross negligence based on its failure to identify and report ARCA's potential liability for sales tax in California.

2. ARCA is a publicly traded company (NASDAQ: ARCI) that engaged Protiviti to identify gaps in ARCA's internal accounting controls and procedures, including with respect to tax controls and procedures. Protiviti failed to do so, breaching both its contract with and its common law duties to ARCA. Protiviti should have discovered the California sales tax issue (as described below) during the course of its work on behalf of ARCA. As a result of Protiviti's gross negligence, ARCA faces a potential multi-million dollar tax liability and has suffered other harm that it otherwise would have avoided, including having to defend class action and derivative lawsuits resulting from the restatement of ARCA's financial reporting to account for this previously undetected tax liability.

## PARTIES

3. ARCA is headquartered in Hennepin County, Minnesota and operates in numerous states across the country. ARCA provides, among other things, appliance recycling services and replacement appliances for utility companies and energy efficiency programs. In California, ARCA provided appliance recycling and replacement programs to low income customers through contracts with Los Angeles area utilities

4. Protiviti is a subsidiary of Robert Half International Inc. and is headquartered in Menlo Park, California with offices throughout the United States, including in Minneapolis, Hennepin County, Minnesota. Protiviti consults in numerous states across the country, including in California. Protiviti provides internal audit, financial, operations, technology, governance, and risk consulting services to its clients, including ARCA.

5. Protiviti represents on its website that its professionals help companies establish effective internal control over financial reporting, rationalize the critical risks, identify the key controls, develop a credible body of evidence supporting controls design and operating effectiveness, drive accountability for compliance throughout the organization, and coordinate the optimization of the attestation process.

## JURISDICTION AND VENUE

6. ARCA filed its initial complaint in the Minnesota district court for Hennepin County. Protiviti removed to this Court based on 28 U.S.C. §§ 1332 and 1441. ARCA's complaint was dismissed without prejudice; ARCA refiles in this Court based on Protiviti's allegations of jurisdiction and venue. This Court has jurisdiction over the claims and parties identified in this action because ARCA and Protiviti are diverse and the amount claimed exceeds $75,000.

7. In removing, Protiviti asserted that venue in this Court was proper under 28 U.S.C. § 1446 because the federal District of Minnesota encompasses Hennepin County. The cause of action arose in Hennepin County and the Defendant has a place of business in Hennepin County.

## FACTUAL BACKGROUND

**I.   From 2011-2013, ARCA Did Not Collect or Pay Any Sales Tax Relating to Its Sale of $41.1 Million in Appliances to California Utility Companies.**

8. In 2011-2013, ARCA's subsidiary, ARCA Recycling, Inc., participated in certain recycling and replacement programs in California (the "California Program"), pursuant to which:

   a. ARCA Recycling, Inc. sold appliances to California utility companies; and

   b. The utility companies, in turn, gave those appliances to qualified low income California residents free of charge to replace older, less energy-efficient units.

9. In 2011-2013, ARCA Recycling, Inc. collected approximately $41.1 million in revenue from its participation in the California Program, comprising approximately 65.8% of ARCA Recycling, Inc.'s revenue and 26.8% ARCA's total recycling revenues company-wide for that period.

10. Accordingly, the California Program, as a result of the revenue earned thereby, was a significant account for ARCA and a material component of ARCA's business.

11. From 2011-2013, ARCA did not collect or pay any California sales tax on appliances sold through the California Program.

**II.   In 2012-2014, ARCA Retained Protiviti to Identify Any Deficiencies, and Propose Corresponding Remedial Measures Regarding ARCA's Internal Accounting Controls, Including in the Area of Tax.**

12. As of October 2, 2012, ARCA and Protiviti entered into a Master Services Agreement together with a series of Statements of Work (collectively, the "SOWs") dated October

19, 2012; April 30, 2013; and September 17, 2013.  True and correct copies of the Master Services Agreement and the SOWs is attached hereto as Exhibit A.

13. Pursuant to the SOWs, Protiviti was engaged to assess the operating effectiveness of ARCA's internal controls, evaluate the operating effectiveness of those internal controls, and facilitate remediation of any identified deficiencies.  The SOWs expressly stated that ARCA's tax-related internal controls were within the scope of Protiviti's engagement.

14. In January 2013, Protiviti reported to the Audit Committee of ARCA's Board of Directors (the "Audit Committee") that one of the goals of Protiviti's work was to "Close control gaps that may exist in the current environment."  With respect to that goal, Protiviti reported to the Audit Committee in early 2013: "We were able to either add additional controls or enhance current controls to address those identified gaps, through conversations with process owners."  Protiviti subsequently reported to the Audit Committee: "Protiviti initially identified 102 design gaps during the first phase of the project.  During the second phase of the project, Protiviti worked with ARCA management to remediate 60 of the identified gaps through the identification of new controls or enhancement of existing controls.  Examples include tax, recycling revenue, and inventory purchase approvals."

15. In its April 30, 2013 SOW, Protiviti agreed to "identify control design gaps," "test the effectiveness of key controls," and deliver a "list of gaps identified in the design effectiveness analysis" and "recommendations for control enhancements."

16. The September 17, 2013 SOW provided that Protiviti would "provide guidance related to the remediation of risk and control gaps identified in Phase 1," "test the operating effectiveness of each key control," and deliver "guidance related to the remediation of risk and control gaps identified in Phase 1."

4

17.     For its services rendered by Protiviti to ARCA from November 2012 through January 2014, Protiviti charged, and ARCA paid, in excess of $186,000.

## III.    2014-2017: The California Board of Equalization Conducted a Sales and Use Tax Audit of ARCA and Determined that ARCA Owed $4.6 Million in Unpaid Sales Tax and Interest.

18.     On May 5, 2014, the California Board of Equalization ("CBOE") began a sales and use tax audit on ARCA for the period of January 1, 2011 through December 31, 2013. After the CBOE audit started, ARCA performed its own internal investigation into the possibility that its California recycling and replacement programs were subject to sales tax. ARCA learned from its own investigation that California sales tax potentially applied to those transactions.

19.     On August 6, 2014, ARCA issued a press release disclosing, among other things, that it was subject to examination by the BOE arising from ARCA's failure to collect sales tax from customers that participated in the California recycling and replacement programs from 2011 through 2013. ARCA further announced that it faced a potential tax assessment of approximately $4 million in back taxes and interest for that period. When this announcement was made, ARCA's stock immediately lost 25% of its value.

20.     On or about November 6, 2014, a CBOE auditor indicated to ARCA that the CBOE was leaning towards making an assessment against ARCA.

21.     On January 27, 2015, ARCA entered into an agreement with the CBOE to participate in the CBOE's Managed Audit Program.

22.     On February 12, 2015, ARCA filed a Current Report Form 8-K with the U.S. Securities and Exchange Commission and attached a press release announcing that it had been approved to enter into the Managed Audit Program. ARCA stated its belief that, at the conclusion of the Managed Audit Program, ARCA would "be assessed at least $4.0 million ($2.6 million net of income taxes) in sales tax and interest related to the appliance replacement programs that

5

[ARCA] had administered on behalf of [its] customer on which [it] did not assess, collect or remit sales tax."

23.     ARCA also announced that, after discussing the matter with Baker Tilly, the Audit Committee had concluded that ARCA's financial statements from 2011 through the first quarter of 2014 "require the correction of amounts previously reported and should no longer be relied upon."

24.     In March 2015, certain ARCA shareholders filed a securities class action on behalf of all ARCA shareholders against ARCA and various ARCA directors and officers. The plaintiffs alleged fraud in connection with the California sales and use tax issue. In December 2015, a separate shareholder derivative action was filed in Minnesota state court alleging breach of fiduciary duty in connection with the California sales tax issue. ARCA incurred approximately $250,000 in legal fees and costs responding to those lawsuits.

25.     On April 13, 2017, the BOE completed the managed audit and issued a Notice of Determination indicating that ARCA was liable for, and ordered to pay, approximately $4.13 million in back taxes and $493,000 in interest for transactions that occurred in 2011-2013.

**IV.     Protiviti Negligently Failed to Identify any Deficiency in ARCA's Tax-Related Internal Controls and to Warn ARCA that It May be Required to Pay Sales Tax on Sales Made Through the California Program.**

26.     In March 2015, Protiviti reported to the Audit Committee: "Through discussions with management, we noted that certain tax related matters were identified related to 2014. Management should assess its current tax process controls and update processes and controls to strength the control environment."

27.     This report by Protiviti refers to the notice ARCA received from the CBOE in 2014 that ARCA might owe sales tax for the years 2011-2013.

6

28.     Despite the substantial time that Protiviti spent examining ARCA's internal controls and becoming familiar with ARCA's business and its sources of revenue, Protiviti had never previously identified any deficiency in ARCA's accounting controls relating to calculation and/or payment of sales tax relating to the California Program, or otherwise raised any issue with respect to ARCA's collection and/or payment of sales tax in California.

29.     Given the significant amount of revenue ARCA generated through the California Program, constituting a high percentage of ARCA's overall revenue, Protiviti should have recognized the California Program as a significant account for ARCA, subject to scrutiny in the course of Protiviti's assessment of ARCA's tax-related internal controls.

30.     Exercising due professional care, Protiviti should have evaluated whether ARCA's tax-related internal controls were sufficient to prevent errors in ARCA's proper collection and payment of any sales tax owed in connection with the California Program.

31.     Had Protiviti exercised due professional care, it would have, at a minimum: (i) recognized that ARCA had not been collecting or paying sales tax on its California Program sales; (ii) reviewed the tax-related portions of the contracts between ARCA and the California utility companies participating in the California Program; and (iii) recognized and reported to ARCA that, under those contracts, it was at least likely that ARCA had an obligation to collect and pay sales tax on revenue earned from the California Program.

32.     Protiviti's failure to recognize and report to ARCA that its appliance recycling and replacement program was potentially subject to sales tax in California evidences a reckless disregard for the rights of ARCA.

**V.     Protiviti's Failure to Timely Warn ARCA of the Risk of Sales Tax Liability in California Caused ARCA to Suffer Substantial Damages.**

33.     As a result of Protiviti's failure to timely identify any deficiency in ARCA's internal controls concerning sales tax, ARCA suffered substantial damages.

34.     Had Protiviti alerted ARCA to the possibility that ARCA may owe sales tax on California Program sales, ARCA would and could have (a) begun collecting tax at the time of sale from participating customers, and/or (b) found another way to strategize to minimize or otherwise avoid those taxes through, for example, an exemption or a legislative action. Instead, ARCA continued collecting revenue pursuant to the California Program, without collecting or paying any corresponding sales tax through the third quarter of 2014.

35.     As a result, and in addition to the multimillion dollar tax liability described above, Protiviti's misconduct proximately caused ARCA to suffer other substantial harm and damages including, without limitation:

a.     Substantial decrease in stock value following the CBOE's announcement of a potential assessment against ARCA.

b.     Substantial costs and fees paid to successor lawyers, accountants and consultants to (i) investigate and correct Protiviti's errors; (ii) respond to the CBOE's audit; (iii) lobby to change the law in California such that ARCA would not owe the subject sales tax; and (iv) defend against the securities class action and shareholder derivative action arising from the CBOE's assessment of unpaid sales tax;

c.     Increased cost of debt arising from ARCA's lender concluding that ARCA's restated financial statements reflected a breach of covenant under ARCA's Revolving Credit Agreement with PNC Bank, resulting in a higher interest rate and increased availability reserve.

    d. Increased cost of raising capital, since the CBOE's announcement of a potential assessment rendered ARCA unable to raise money in the capital equity markets (i.e., NASDAQ). Consequently, ARCA was forced to enter into a Securities Purchase Agreement with a third party lender pursuant to which the lender was issued a $7.7 million convertible promissory note (the "Convertible Note"). Under the Convertible Note, the lender has the option, at any time, to convert the debt into shares of ARCA stock at a per-share price far below the per-share price of ARCA stock when the Convertible Note was executed.

**COUNT I**
**BREACH OF CONTRACT**

36. ARCA restates and incorporates by reference all of the above allegations as though fully stated herein.

37. ARCA and Protiviti entered into valid and enforceable contracts, as reflected in the Master Services Agreement and SOWs dated October 19, 2012; April 30, 2013; and September 17, 2013.

38. ARCA performed its obligations under those contracts by paying Protiviti the agreed-upon fees.

39. Protiviti breached those contracts by, among other things, failing to identify gaps in ARCA's accounting controls, including in the area of tax.

40. As a result of Protiviti's breach of contract, Protiviti did not identify or disclose ARCA's potential liability for California sales tax.

41. Protiviti's failure to timely identify and disclose this issue has caused and will cause damages to ARCA in excess of $75,000, the exact amount to be proven at trial.

## COUNT II
## NEGLIGENCE

42. ARCA restates and incorporates by reference all of the above allegations as though fully stated herein.

43. Protiviti and ARCA had a professional relationship.

44. As ARCA's consultant, Protiviti owed ARCA a duty of care.

45. Protiviti breached its duty of care to ARCA by negligently failing to identify gaps in ARCA's accounting controls, including in the area of tax, and by failing to timely identify and disclose ARCA's potential liability for California sales tax.

46. As a direct and proximate result of Protiviti's negligence, ARCA has suffered and will suffer damages in excess of $75,000, the exact amount to be proven at trial.

## COUNT III
## GROSS NEGLIGENCE

47. ARCA restates and incorporates by reference all of the above allegations as though fully stated herein.

48. Paragraph 11 of the Master Services Agreement purports to limit Protiviti's liability to ARCA to "the aggregate, for all claims, liability, losses, damages or expenses, the total amount of fees paid to Protiviti under the Statement of Work that is the subject of the claim. . ."

49. As described above, Protiviti's conduct is not only negligent, but grossly negligent.

50. Paragraph 18 of the Master Services Agreement provides that "the rights and duties of the parties hereunder shall be governed by, and construed in accordance with" New York law.

51. New York law provides that public policy forbids a party's attempt to escape liability through a contractual clause for damages occasioned by grossly negligent conduct.

52. As described above, Protiviti's conduct evinces a reckless disregard for the rights of ARCA and therefore constitutes grossly negligent conduct under New York law.

53. Protiviti breached its duty of care to ARCA and was grossly negligent by failing to identify gaps in ARCA's accounting controls, including in the area of tax and by failing to timely identify and disclose ARCA's potential liability for California sales tax.

54. As a direct and proximate result of Protiviti's grossly negligent conduct, ARCA has suffered and will suffer damages in excess of $75,000, the exact amount to be proven at trial.

## JURY DEMAND

55. ARCA demands a jury trial for all claims so-triable.

## PRAYER FOR RELIEF

**NOW, THEREFORE**, ARCA respectfully prays for the following relief against Protiviti:

1. A judgment in favor of ARCA and against Protiviti on all of ARCA's claims;

2. An award of damages in favor of ARCA and against Protiviti for all damages ARCA has incurred and will incur as a result of Protiviti's breach of contract, negligence, and gross negligence in an amount exceeding $75,000 and to be proven at trial;

3. Disgorgement of all fees that ARCA paid to Protiviti for the period in question;

4. An award in favor of ARCA and against Protiviti of all pre- and post-judgment interest, attorneys' fees, costs and expenses to the greatest extent allowed by law; and

5. Such other and further relief as the Court may deem just and equitable.

Dated: October 2, 2018

Respectfully submitted,

**APPLIANCE RECYCLING CENTERS OF AMERICA, INC.**

By: /s/ William G. Carpenter

William G. Carpenter (#274598)
BRIOL & BENSON, PLLC
3700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
bill@briollaw.com
Telephone: (612) 756-7777
Facsimile: (612) 337-5151

*Local Counsel for Plaintiff Appliance Recycling Centers of America, Inc.*

Robert A. Chapman (*Pro Hac Vice Application Pending*)
Sara Siegall (*Pro Hac Vice Application Pending*)
CHAPMAN SPINGOLA, LLP
190 South LaSalle Street
Suite 3850
Chicago, Illinois 60603
ssiegall@chapmanspingola.com
Telephone: (312) 606-8665
Fascimile: (312) 630-9233

*Lead Counsel for Plaintiff Appliance Recycling Centers of America, Inc.*